UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ELEANOR HANDLER, et al.,           )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        1:11-cv-00308-JAW
                                   )
MARY MAYHEW, et al.,               )
                                   )
            Defendant.             )


**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT XIII**

Russell and Eleanor Handler sought civil relief in this Court for a variety of
alleged statutory and constitutional wrongs related to Maine state court
proceedings terminating their parental rights. Count XIII of the Third Amended
Complaint alleges that Bryant White, Scott Story, Waldo County, and the Waldo
County Sheriff's Department (the Waldo County Defendants) are liable under 42
U.S.C. § 1983 for the unlawful arrest or malicious prosecution of Russell Handler.
Before the Court is the Waldo County Defendants' Motion for Partial Summary
Judgment as to Count XIII. Mr. Handler's § 1983 claim is grounded on the success
of his malicious prosecution theory. In order to prevail on his malicious prosecution
claim, however, Mr. Handler must show that the criminal proceeding terminated
favorably to him; the undisputed facts of the summary judgment record, even
viewed in a light most favorably to Mr. Handler, show that he pleaded nolo

contendere to the criminal charges. Accordingly, the Waldo County Defendants are entitled to judgment as a matter of law on Count XIII.

## I.    LEGAL STANDARD

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Material" means that the fact "'has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). "Genuine" means that "'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Id.* (quoting *McCarthy*, 56 F.3d at 315). The Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party may support or oppose a statement of fact using an affidavit, but the affidavit must be made on personal knowledge. FED. R. CIV. P. 56(c)(4). The Court

need not credit statements of "fact" that are argumentative or conclusory. *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 796 (1st Cir. 1992).

## II.    FACTS

### A.    Procedural Posture

The Handlers[1] filed their first Complaint on August 12, 2011. *Compl.* (ECF No. 2). They filed a First Amended Complaint on November 21, 2011, which Defendants White and Robert Tiner answered on December 12, 2011. *First Am. Compl.* (ECF No. 11); *Answer to Am. Compl.* (ECF No. 19). Four days later, on December 16, 2011, the Handlers filed a Second Amended Complaint. *Second Am. Compl.* (ECF No. 27).

Following a series of dispositive motions by the Maine State Defendants, the Handlers requested leave to file a proposed Third Amended Complaint on December 10, 2012. *Pls.' Mot. for Leave to File Second Am. Compl. Joining Additional Defs.* (ECF No. 107). The Court granted that motion on January 17, 2013. *Order Granting Mot. to Amend* (ECF No. 118). The Handlers filed their Third Amended Complaint the next day, *Third Am. Compl.* (ECF No. 12), and Defendants White, Story, Tiner, Waldo County, and the Waldo County Sheriff's Department answered on January 23, 2013. *Answer to Am. Compl.* (ECF No. 121).[2]

---

[1]    Although Eleanor Handler was terminated as a party by the Court's dismissal of most of the counts against the State Defendants, the Court refers to the plaintiffs as "the Handlers" for clarity and consistency with earlier orders.

[2]    The Defendants claim that the operative pleading here should be referred to as a "Second Amended Complaint," *Mot. for Partial Summ. J.* at 1 n.2 (ECF No. 153) (June 14, 2013), but the docket shows an initial Complaint and three amendments. The Handlers filed the first amendment as a matter of course under Federal Rule of Civil Procedure 15(a) since it was filed before service. FED. R. CIV. P. 15(a)(1)(A). On December 16, 2011, the Handlers filed an unopposed motion to file a

The Waldo County Defendants moved for partial summary judgment as to Count XIII on June 14, 2013. *Mot. for Partial Summ. J.* (ECF No. 153) (*Defs.' Mot.*). They included a set of Stipulated Facts and an additional Defendants' Statement of Material Facts. *Stipulated Statement of Material Facts* (ECF No. 151) (*Stip.*); *Defs. Bryant White, Scott Story, Waldo Cnty. and the Waldo Cnty. Sheriff's Dep't's Statement of Material Facts in Support of Mot. for Summ. J.* (ECF No. 152) (DSMF). With the Defendants' facts came affidavits from Detective White, DSMF Attach. 3 *Aff. of Bryant White* (ECF No. 152) (*White Aff.*), Deputy Merl Reed, DSMF Attach. 4 *Aff. of Merl Reed* (ECF No. 152) (*Reed Aff.*), and Sheriff Story, DSMF Attach.7 *Aff. of Scott Story* (ECF No. 12) (*Story Aff.*).

The Handlers filed an opposition to the motion on July 12, 2013. *Pl.'s Resp. to Def.'s Mot. for Partial Summ. J.* (ECF No. 160) (*Pl.'s Opp'n*). They filed a reply statement of material facts, *Pl.'s Resp. to Def.'s Statement of Material Facts* (ECF No. 161) (PRDSMF), and a statement of additional material facts. *Pl.'s Statement of Material Facts* (ECF No. 162) (PSAMF). Both Russell Handler and Eleanor Handler filed affidavits as well. *Pl.'s Opp'n* Attach. 2 *Aff. of Russell Handler* (ECF No. 160) (*Russell Handler Aff.*); *Pl.'s Opp'n* Attach. 3 *Aff. of Eleanor Handler* (ECF No. 160) (*Eleanor Handler Aff.*).

The Waldo County Defendants replied to the Handlers' opposition on July 31, 2013. *Def.'s Reply Mem. in Support of Mot. for Partial Summ. J.* (ECF No. 168)

---

second amended complaint and on the same day, the Court granted the motion. *Unopposed Mot. to Am. Compl.* (ECF No. 26); *Order Granting Without Objection Unopposed Mot. to Am. Compl.* (ECF No. 29). As noted, on January 17, 2013, the Court granted the Handlers' motion to file third amended complaint. The Third Amended Complaint therefore is the operative pleading.

(*Defs.' Reply*).  These Defendants accompanied this opposition with a response to the Handlers' motions to strike and with a response to the Handlers' statement of additional material facts.  *Defs. Bryant White, Scott Story, Waldo Cnty., and the Waldo Cnty. Sheriff's Dep't's Resp. to Pl.'s Req. to Strike Paragraphs from Defs.' Statement of Material facts and Resp. to Additional Material Facts* (ECF No. 169) (*Defs.' Opp'n to Mot. to Strike*) (DRPSAMF).  The Waldo County Defendants included with their reply an affidavit from Officer Randy Fox of the Waldo County Corrections Facility, DRPSAMF Attach. 1 *Aff. of Randy Fox* (ECF No. 169) (*Fox Aff.*), and a second affidavit from Sheriff Story.  DRPSAMF Attach. 2 *Aff. of Scott Story* (ECF No. 169) (*Second Story Aff.*).

### B.    Summary Judgment Facts[3]

The parties agreed to thirty-three stipulated facts.  *Stip.*  The Defendants supplied twenty-seven additional facts, DSMF, and the Handlers supplied forty-one additional facts.  PSAMF.

### 1.    Stipulated Facts

Detective Bryant White worked as a domestic violence coordinator at the Waldo County Sheriff's Department beginning in May 1999.  *Stip.* ¶ 1.  Detective White worked at the Waldo County Sheriff's Department until he retired in 2009.  *Id.* ¶ 2.  As domestic violence coordinator, Detective White's duties were to

---

[3]    Unlike some of the earlier orders in this case, the parties have not filed this portion of the case under seal nor have they suggested that the Court's Order should be sealed.  The Defendants did move to seal Exhibits J and K to their Statement of Material Facts to protect personal identifier information.  *Defs.' Mot. to Seal* (ECF No. 154).  Magistrate Judge Rich granted that motion on June 17, 2013.  *Order Granting Mot. to Seal*  (ECF No. 157).  As the Court has avoided referencing personal identifiers in its Order, the full Order on this motion will be publicly filed.

coordinate any investigations and prosecutions of domestic violence cases. *Id.* ¶ 3. Scott Story has been the Sheriff of Waldo County since 2000. *Id.* ¶ 4.

On August 14, 2005, Russell Handler was arrested by Waldo County Sheriff's Deputy Merl Reed. *Id.* ¶ 5. On September 20, 2005, Russell Handler was arraigned on an original assault charge stemming from the August 14, 2005 arrest along with three added counts of assault. *Id.* ¶ 6.

An Amended Order for Protection from Abuse was issued on February 6, 2006, prohibiting Russell Handler from having any contact with Eleanor Handler except "'[i]n the presence of counsel for divorce proceedings and meditation [sic, mediation],'" "'[b]y telephone, but only for such calls initiated by Plaintiff [Eleanor Handler],'" and "'[i]n person for the purpose of meeting to discuss sale of marital real estate and to meet with realtors and prospective buyers for said purpose.'" *Id.* ¶ 7 (quoting *Stip.* Attach. 1 *Am. Order for Protection from Abuse* (ECF No. 151) (Feb. 6, 2006) (*2006 PFA*)). The Amended Order for Protection from Abuse was served in hand on Russell Handler on February 9, 2006 by Sergeant Mark Schade. *Id.* ¶ 8.

Detective White prepared an Affidavit in support of arrest warrant and submitted it to the Maine District Court on March 3, 2006. *Id.* ¶ 9. Russell Handler was arrested on March 4, 2006, in New York by the King's Point Police Department. *Id.* ¶ 10.

On April 14, 2006, the Governor of Maine, John Baldacci, signed and sealed a Requisition to the Governor of the State of New York requiring that Russell

Handler be apprehended and delivered to Sheriff Story of the Waldo County Sheriff's Office. *Id.* ¶ 11. On May 2, 2006, the Governor of New York, George Pataki, signed and sealed a Governor's Warrant requiring that Russell Handler be delivered to Maine. *Id.* ¶ 12. Russell Handler was released from jail on August 28, 2006. *Id.* ¶ 13.

During his entire tenure at the Waldo County Sheriff's Office, Detective Bryant White received only the one hour online video professional training related to individuals who deal with mental illness. *Id.* ¶ 14. Detective White worked closely with the Waldo County District Attorney's Office. *Id.* ¶ 15.

Detective White received hundreds of pages of Eleanor Handler's mental health records. *Id.* ¶ 16. He received a package from Attorney Don Brown on October 13, 2005, containing Ms. Handler's medical records from MacLean Hospital, Acadia Hospital, and Arbor-HRI Hospital. *Id.* ¶ 17. Detective White made a statement in his notes that he did not believe that these mental health records provided by Attorney Brown were discoverable, and he recommended that they not be released to the Defendant in a criminal case as discovery because he deemed them not relevant to the Defendant. *Id.* ¶ 18.

Detective White received more medical records of Ms. Handler on October 26, 2005. *Id.* ¶ 19. Ms. Handler was actively telling Detective White that she was not mentally ill around October 2005. *Id.* ¶ 20. However, Ms. Handler, on numerous

occasions,[4] recanted the allegations she had made toward Mr. Handler. *Id.* ¶ 21. Detective White never consulted with a mental health expert to go over the mental health records he received on October 13 and 26, 2005. *Id.* ¶ 22.

Detective White believed the protection order that Ms. Handler had against Mr. Handler in Maine applied outside the state of Maine. *Id.* ¶ 23. Detective White understood that Ms. Handler had no protection order against Mr. Handler in New York. *Id.* ¶ 24. Detective White agrees that around October 2005, the Handler case was consuming "a lot of his time." *Id.* ¶ 25.

Captain Tiner and Deputy Michael Dudley transferred Mr. Handler from Nassau County in Long Island, New York to Belfast, Maine in July 2006. *Id.* ¶ 26. Captain Tiner and Deputy Dudley were given the task of collecting Mr. Handler in New York because they were "sworn," and the policy of their police department is "to have sworn staff go." *Id.* ¶ 27.[5]

Deputy White aided Ms. Handler in obtaining a Protection from Abuse Order against Mr. Handler in the fall of 2005. *Id.* ¶ 28. Deputy White described Mr. Handler's attitude in the jail in 2006 as within normal limits. *Id.* at ¶ 29. Mr. Handler maintains that he did not call Ms. Handler and violate the order of protection. *Id.* ¶ 30. Mr. Handler states that he was called from unlisted numbers and blocked numbers. *Id.* ¶ 31.

---

[4]    The Stipulated Facts do not identify when Ms. Handler recanted these accusations. It is unclear from the Stipulated Facts when, relative to October 2006, Ms. Handler recanted. The parties' additional facts do not shed any light on the chronology.

[5]    The parties do not identify Deputy Dudley other than by title; he is not a named party and does not appear in the Third Amended Complaint. *See Third Am. Compl.* The Court assumes from the context that he is a Waldo County Deputy Sheriff.

All of the conduct alleged against Mr. Handler in 2006 as a violation of his protection order occurred in the state of New York. *Id.* ¶ 32. None of the conduct for which he was extradited occurred within the state of Maine. *Id.* ¶ 33.

### 2. The Defendants' Facts

As Sheriff of Waldo County, Scott Story is the final decision-maker at the Waldo County Sheriff's Department, including for matters related to both law enforcement and corrections. DSMF ¶ 1; PRDSMF ¶ 1.[6] As Sheriff of Waldo County, Mr. Story has to officially approve all policies and procedures at the Waldo County Sheriff's Department. DSMF ¶ 2; PRDSMF ¶ 2.[7]

Other than this case, there have been no complaints, lawsuits, or notices of claim of false arrest or malicious prosecution against any employee of the Waldo County Sheriff's Department during Scott Story's tenure as Sheriff. DSMF ¶ 3;

---

[6]    The Handlers interpose a qualified response, and also move to strike DSMF ¶ 1 under Local Rule 56(e). They claim that "it is unclear if the affiant can produce admissible evidence to support this fact," and furthermore that "it is vague as to what 'final decisions' Sheriff Story can make on the law enforcement and corrections sides." PRDSMF ¶ 1. The motion to strike is overruled. A movant for summary judgment may support his statement of facts with a sworn affidavit made on personal knowledge. FED. R. CIV. P. 56(c)(1)(A). The affidavit serves as a proxy for trial testimony. Here, the Defendants supported paragraph 1 with a citation to Sheriff Story's affidavit. His statement as to his role at the Sheriff's Department reflects his personal knowledge. This is sufficient to support the assertion of paragraph 1. Nor is the assertion, as far as it goes, "vague," as the Handlers claim.

    Furthermore, the Handlers' qualified response is inappropriate. The purpose of a "qualified" response is to allow the party opposing the assertion to explain why he cannot provide record material in support of his opposition—not to challenge the sufficiency of the other side's evidence. In unusual cases, a "qualified" response may also be used to explain why additional information, available in the record, is necessary to prevent the assertion from being materially incomplete or otherwise misleading. It is not, however, an appropriate platform to make legal arguments, offer unnecessary factual context, or introduce entirely new facts. The Court deems the Handlers' qualified response admitted for the purpose of summary judgment under Local Rules 56(f), (g).

[7]    The Handlers' motion to strike is overruled. *See supra* note 6. The Handlers also argue that any "reference to policies and procedures is inadmissible hearsay." PRDSMF ¶ 2. This is incorrect. Hearsay is an out of court statement, offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). The assertion of paragraph 2 does not include the contents of any policies; it only goes to what Sheriff Story did as part of his official duties. The Court deems paragraph 2 admitted under Local Rule 56(f), (g).

PRDSMF ¶ 3.[8]  Other than this particular case, Sheriff Story is unaware of any prior allegations of false arrest or malicious prosecution against any employee of the Waldo County Sheriff's Department during his tenure as Sheriff.  DSMF ¶ 4; PRDSMF ¶ 4.[9]

On August 14, 2005, Deputy Reed went to the Handlers' residence in response to a 911 call.  DSMF ¶ 5; PRDSMF ¶ 5.  He had been told by a dispatcher that Eleanor Handler had called from a neighbor's house, claiming her husband had thrown her in a dumpster with no clothes.  DSMF ¶ 5; PRDSMF ¶ 5.[10]  When he arrived on the scene he spoke to Ms. Handler, who told him that Mr. Handler had grabbed her by the arm, "placed" her outside, naked, and made her get into a

---

[8]     The Handlers' motion to strike is overruled.  *See supra* note 6.  The record support for the assertion of paragraph 3 is Sheriff Story's affidavit, which is not hearsay, and contrary to the Handlers' claim that paragraph 3 is "open to a multitude of interpretations," the assertion is extremely specific.  The Court deems paragraph 3 admitted under Local Rule 56(f), (g).

[9]     The Handlers' motion to strike is overruled.  The assertion of paragraph 4 is neither "unsupported" nor "conclusory," as the Handlers claim.  To the contrary, it is supported by Sheriff Story's affidavit, and asserts a concrete, historical fact.  A "conclusory" statement is one that asserts a legal conclusion (e.g., "The Defendant's negligence caused the Plaintiff's injury"), asserts a subjective fact (e.g., "The Defendant and the Plaintiff were best friends"), or asserts a complex fact that must be proven by subsidiary facts (e.g., "The Defendant had extensive business dealings with the Plaintiff").  Paragraph 4 makes a categorical but specific claim: that, other than this case, Sheriff Story is unaware of any alleged false arrest or malicious prosecution by his staff during his tenure.  This is entirely appropriate for a statement of material facts.  The Court deems paragraph 4 admitted under Local Rule 56(f), (g).

[10]     The Handlers' motion to strike is overruled.  The first ground for this motion is that the assertion is not in the form of separately numbered paragraphs, as required by Local Rule 56(b).  PRDSMF ¶ 5.  Nothing about Local Rule 56(b) requires each assertion to be a single sentence.  The second ground for objection is that the statement is inadmissible double hearsay.  *Id.*  However, as the Defendants point out, the statement is offered to show Detective Reed's motive for visiting the residence, not to show that Mr. Handler had in fact thrown Ms. Handler naked into a dumpster.  The final ground for objection, authenticity, *id.*, is irrelevant; the assertion does not go to the content of the 911 call.

    The Handlers also interpose a qualified response, but the qualification does not change the substance of paragraph 5.  *See supra* note 6.  The Court deems paragraph 5 admitted under Local Rule 56(f), (g).

dumpster.  DSMF ¶ 6; PRDSMF ¶ 6.[11]  Deputy Reed arrested Mr. Handler and charged him with assault in violation of 17-A M.R.S. § 207.  DSMF ¶ 7; PRDSMF ¶ 7.[12]

Before arresting Mr. Handler on August 14, 2005, Deputy Reed did not communicate with Detective White concerning either Russell or Eleanor Handler.  DSMF ¶ 8; PRDSMF ¶ 8.  Detective White was not present during the arrest of Mr. Handler on August 14, 2005.  DSMF ¶ 9; PRDSMF ¶ 9.

On August 14, 2005, Mr. Handler's bail conditions stated that he would have no direct or indirect contact with Ms. Handler.  DSMF ¶ 10; PRDSMF ¶ 10.[13]  After Deputy Reed arrested Mr. Handler, whether and how to prosecute the case against Mr. Handler was in the hands of the prosecutor at the Waldo County District Attorney's Office.  DSMF ¶ 11; PRDSMF ¶ 11.[14]

On August 15, 2005, Eleanor Handler wrote out a statement describing what had happened the day before.  DSMF ¶ 12; PRDSMF ¶ 12.  She gave the statement to Bryan White and told him that it was true.  DSMF ¶ 12; PRDSMF ¶ 12.[15]

---

[11]    The Handlers interpose a qualified response, but the qualification does not change the substance of paragraph 5.  *See supra* note 6.  The Court deems paragraph 6 admitted under Local Rule 56(f), (g).

[12]    The Handlers' motion to strike is overruled.  *See supra* note 6.  The Court deems paragraph 7 admitted under Local Rule 56(f), (g).

[13]    The Handlers' motion to strike is overruled.  *See supra* note 10.  The Handlers also claim that the record support for the Defendants' paragraph 10 is inadmissible hearsay.  PRDSMF ¶ 10.  However, the exhibit could be admitted as a record of a regularly conducted activity under Federal Rule of Evidence 803(6), or as the statement of a party opponent under Rule 801(d)(2) because it was signed by Mr. Handler.

[14]    The Handlers raise a relevancy objection to paragraph 11; that objection is overruled.  The assertion is relevant to Detective White's qualified immunity defense.

[15]    The Handlers' motion to strike is overruled.  *See supra* note 10.  The Handlers also interpose a qualified response, but the qualification does not change the substance of paragraph 12.  *See supra* note 6.  The Court deems paragraph 12 admitted under Local Rule 56(f), (g).

On September 20, 2005, Mr. Handler's bail bond was amended and his bail conditions stated that he would have no direct or indirect contact with Ms. Handler or Sandra Flewellin. DSMF ¶ 13; PRDSMF ¶ 13. Mr. Handler signed this form. DSMF ¶ 13; PRDSMF ¶ 13.[16] A Protection from Abuse Order was issued on October 3, 2005, which prohibited Mr. Handler from directly or indirectly contacting Ms. Handler except in the presence of counsel for divorce proceedings and mediation. DSMF ¶ 14; PRDSMF ¶ 14.[17]

On February 27 and 28, 2006, Russell and Eleanor Handler were present together at the John F. Kennedy School in New York. DSMF ¶ 15; PRDSMF ¶ 15.[18] On March 2, 2006, Detective White received a phone call from Claudia Kjer, a Maine Department of Health and Human Services (MDHHS) caseworker. DSMF ¶ 16; PRDSMF ¶16. Ms. Kjer told Detective White that Mr. Handler and Ms. Handler had been together to register their son at a school in New York. DSMF ¶ 16; PRDSMF ¶ 16.[19] On March 3, 2006, Detective White received a fax that included a letter from the principal of the John F. Kennedy School in New York,

---

[16]     The Handlers' motion to strike is overruled. *See supra* note 10. The Handlers also object that the record support for paragraph 13 is inadmissible hearsay and also that it is not a certified copy of the bail bond. Both grounds lack merit. *See supra* note 13. The Court deems paragraph 13 admitted under Local Rule 56(f), (g).

[17]     The Handlers' motion to strike is overruled. *See supra* notes 10, 13. The Court deems paragraph 14 admitted under Local Rule 56(f), (g).

[18]     The Handlers interpose a qualified response, but the qualification does not change the substance of paragraph 15. *See supra* note 6. The Court deems paragraph 15 admitted under Local Rule 56(f), (g).

[19]     The Handlers' motion to strike is overruled. *See supra* note 10. The Handlers also object that the phone call itself is hearsay unless Ms. Kjer testifies. PRDSMF ¶ 16. However, the contents of the phone call are not being offered to prove that Mr. Handler was actually with Ms. Handler in the school; that would be irrelevant to the malicious prosecution count. Rather, it is offered to show Detective White's state of mind on March 2, 2006. This makes the phone call admissible non-hearsay. The Court deems paragraph 16 admitted under Local Rule 56(f), (g).

which stated that Russell and Eleanor Handler had been together at the school on February 27 and 28, 2006. DSMF ¶ 17; PRDSMF ¶ 17.[20] On the same day, Detective White received another fax that included sign in sheets from the John F. Kennedy School in New York, which showed that Eleanor and Russell Handler had both signed in at the school at 10:20 AM on February 27, 2006, and 9:20 AM on February 28, 2006. DSMF ¶ 18; PRDSMF ¶ 18.[21] That same day, Detective White spoke to Wendy Higgins and Milton Higgins, who both told him that they had spoken to Russell Handler on the phone that day and they had heard Eleanor Handler in the background. DSMF ¶ 19; PRDSMF ¶ 19.[22] On March 3, Detective White also received a copy of an Affidavit of Claudia Kjer that stated that MDHHS had learned that on February 28, 2006, Russell and Eleanor Handler had been present together at a school in New York with their son. DSMF ¶ 20; PRDSMF ¶ 20.[23]

On March 3, 2006. based on Detective White's Affidavit in Support of Arrest Warrant, District Court Judge W. Anderson[24] authorized and issued an arrest warrant charging Russell Handler with violating a protective order under 19-A M.R.S. § 4011(1) and violating a condition of release under 15 M.R.S. § 1092(1)(A).

---

[20]     The Handlers' motion to strike is overruled. *See supra* note 19. Detective White is competent to testify to the contents of a fax that he received. The Court deems paragraph 17 admitted under Local Rule 56(f), (g).

[21]     The Handlers' motion to strike is overruled. *See supra* note 20. The Court deems paragraph 18 admitted under Local Rule 56(f), (g).

[22]     The Handlers' motion to strike is overruled. *See supra* note 20. The Court deems paragraph 19 admitted under Local Rule 56(f), (g).

[23]     The Handlers' motion to strike is overruled. *See supra* note 20. The Court deems paragraph 20 admitted under Local Rule 56(f), (g).

[24]     The exhibit supporting paragraphs 21 and 22 shows the signature of a "W. Anderson, Judge, District Court."

DSMF ¶¶ 21-22; PRDSMF ¶¶ 21-22.[25]   Mr. Handler challenged extradition to

Maine.  DSMF ¶ 23; PRDSMF ¶ 23.   However, on July 6, 2006, Justice Frank A.

Gulotta, Jr., acting Supreme Court Justice in New York, ordered Mr. Handler to be

released to the Sheriff of Waldo County or his designee.   DSMF ¶ 23; PRDSMF ¶

23.[26]

On July 17, 2006, the state of Maine filed a Motion for Revocation of Pre-

Conviction Bail, which was granted by a state court after a hearing.  DSMF ¶ 24;

PRDSMF ¶ 24.[27]   On August 28, 2006, Mr. Handler pleaded nolo contendere to

violation of protective order and violation of condition of release.   DSMF ¶ 25;

PRDSMF ¶ 25.[28]   On the same day, Mr. Handler pleaded nolo contendere to one

assault charge and violation of conditions of release.  DSMF ¶ 26; PRDSMF ¶ 26.[29]

Mr. Handler was sentenced to five months for the assault charge and ten days for

[25]     The Handlers' motion to strike is overruled.  *See supra* note 20.  In addition, the assertions of paragraphs 21 and 22 are supported by Detective White's affidavit, made on personal knowledge. *White Aff.* at ¶ 12.  The Handlers also deny "that Detective White was forthcoming in his 'Affidavit in Support of Arrest Warrant' regarding the territorial applicability of Russell Handler's alleged conduct to the State of Maine."  PRDSMF ¶ 21.  This is a legal conclusion, not a fact.  The Court will address in due course whether Detective White committed a legal error in his affidavit.  However, the affidavit is factually correct; it states repeatedly that Mr. Handler's conduct took place in the state of New York.  DSMF Attach. 15 *Aff. in Support of Arrest Warrant*, at 1-2.  The Court deems paragraphs 21 and 22 admitted under Local Rule 56(f), (g).

[26]     The Handlers' motion to strike is overruled.  They claim that the record evidence supporting paragraph 23, *Story Aff.* Exs. G, H (ECF No. 152), is inadmissible because it is not a certified copy and is hearsay.  PRDSMF ¶ 23.  They also make reference to certain unidentified "authenticity issues" with Exhibit G.  As the Defendants correctly note, none of these issues shows that there is no admissible form of the evidence that would support the assertion.  The Handlers have not made any concrete allegation that the documents are inauthentic, and both can be self-authenticated through certification.  Both are also admissible as public records under Federal Rule of Evidence 803(8).  The Court deems paragraph 23 admitted under Local Rule 56(f), (g).

[27]     The Handlers' motion to strike is overruled.  *See supra* note 26.  The Court deems paragraph 24 admitted under Local Rule 56(f), (g).

[28]     The Handlers' motion to strike is overruled.  *See supra* note 26.  The Court deems paragraph 25 admitted under Local Rule 56(f), (g).

[29]     The Handlers' motion to strike is overruled.  *See supra* note 26.  The Court deems paragraph 26 admitted under Local Rule 56(f), (g).

the violation of conditions of release charge, to be served concurrently. DSMF ¶ 27; PRDSMF ¶ 27. He was also sentenced to ten days for the violation of protective order charge and the violation of condition of release charge, to be served concurrently with each other and the other charges. DSMF ¶ 27; PRDSMF ¶ 27.[30]

### 3. The Handlers' Facts[31]

#### a. Ms. Handler's Mental Illness

Ms. Handler had heard voices in her head since she was a child. PSAMF ¶ 4; DRPSAMF ¶ 4. The voices became progressively worse through the years. PSAMF ¶ 5; DRPSAMF ¶ 5. Ms. Handler's paranoia, fear, and delusions became so severe that she had to go to a mental hospital in 2002. PSAMF ¶ 6; DRPSAMF ¶ 6. She has been in and out of mental health hospitals regularly since that time. PSAMF ¶ 7; DRPSAMF ¶ 7.

Ms. Handler authored a letter to David Abbot, a minister, on May 20, 2005, in which she discussed her jealousy of Mr. Handler and her desire to see him fail. PSAMF ¶ 27; DRPSAMF ¶ 27. She admits that she lied to Mr. Handler about wanting children, because she never really wanted children. PSAMF ¶ 27; DRPSAMF ¶ 27.

---

[30] The Handlers' motion to strike is overruled. *See supra* notes 10, 26. The Court deems paragraph 27 admitted under Local Rule 56(f), (g).

[31] The Defendants claim that a number of the Handlers' facts are not legally relevant to Count XIII. *Def.'s Reply* at 9 n.3. However, the Defendants, deferring to this Court's admonition at the Rule 56(h) conference, did not move to strike any of these purportedly immaterial facts. The Court recites the Handlers' undisputed facts where there is a colorable claim of relevance to Count XIII, and will analyze in detail their relevance in due course.

### b.     Mr. Handler's Arrest in 2005

At the time of the "dumpster incident" on August 14, 2005, Russell and Eleanor Handler had just moved to the Cross Street residence in Maine.  PSAMF ¶ 10; DRPSAMF ¶ 10.  That night, Ms. Handler had been up all night in a manic rage, drinking and drugged.  PSAMF ¶ 11; DRPSAMF ¶ 11.[32]  She spent the night throwing things out of the upstairs window into the dumpster.  PSAMF ¶ 11; DRPSAMF ¶ 11.  She did not hit the dumpster every time, and she was not sure what she had thrown out, so she sometimes went downstairs in the dark and climbed into the dumpster to sort through what she had thrown out.  PSAMF ¶ 11; DRPSAMF ¶ 11.  She did this repeatedly all night.  PSAMF ¶ 12; DRPSAMF ¶ 12.[33]

The next morning, Mr. Handler saw all of the things lying around the dumpster and asked Ms. Handler: "How did this get here?"   PSAMF ¶ 13;

---

[32]     The Defendants deny all of the assertions of paragraph 11.  DRPSAMF ¶ 11 (citing DSMF Attach. 9 *Morning of 8/14/05* (ECF No. 152) (undated) (*E. Handler Written Statement*).  They point out that Ms. Handler's written statement describing the events of August 13 and 14, 2005 contradicts this assertion, and that she acknowledged in her deposition that she told police at the time that the contents of her written statement were true.   *Id.* (citing DSMF Attach. 2 *Dep. of Eleanor Handler* (ECF No. 152) (Jan. 22, 2013) (*Def.'s E. Handler Dep. Tr.*)).   Under some circumstances, the Court is required to ignore an affidavit that contradicts earlier deposition testimony.  *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994).  However, this is not such a situation; the conflicting evidence here is a contemporaneous written statement to police and a later deposition transcript.  The Defendants do not argue that Eleanor Handler's affidavit contradicts her deposition transcript.

Record evidence supports the assertions of paragraph 11.  *Def.'s E. Handler Dep. Tr.* at 42:6-46:2; *Eleanor Handler Aff.* at ¶ 5.  Viewing this evidence in a light most favorable to the Handlers, and drawing all reasonable inferences in their favor, a fact-finder could conclude that Ms. Handler's deposition testimony is true, and that her written statement to the police regarding the events of August 13 and 14, 2005 was false.  At the summary judgment stage, this is sufficient to support an assertion of fact.  Because the Defendants have not controverted the factual assertions of paragraph 11, the Court deems their denied response admitted under Local Rule 56(f), (g).

[33]     The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).  *See supra* note 32.

DRPSAMF ¶ 13.[34]  Ms. Handler told him that she was in a rage.  PSAMF ¶ 14; DRPSAMF ¶ 14.[35]  She then ran out of the house, climbed into the dumpster, and started throwing things out of the dumpster.  PSAMF ¶ 14; DRPSAMF ¶ 14.  The gardener asked Ms. Handler what she was doing, and she told him to call the police. PSAMF ¶ 15; DRPSAMF ¶ 15.

The voices in Ms. Handler's head convinced her that staying at a mental institution "was my fate."  PSAMF ¶ 16; DRPSAMF ¶ 16.  She wanted Mr. Handler arrested for putting her in the dumpster so that she did not have to go to a mental institution again.  PSAMF ¶ 17; DRPSAMF ¶ 17.[36]  The injuries she suffered the night of the dumpster episode were self-inflicted.  PSAMF ¶ 18; DRPSAMF ¶ 18.[37] The night of the "dumpster incident," Ms. Handler was "falling down drunk." PSAMF ¶ 19; DRPSAMF ¶ 19.

### c.    The Contact Between Eleanor and Russell Handler in February, 2006

In February 2006, Eleanor Handler was in a manic rage, drinking heavily, and taking numerous drugs.  PSAMF ¶ 1; DRPSAMF ¶ 1.  Ms. Handler was also delusional and paranoid.  PSAMF ¶ 2; DRPSAMF ¶ 2.  In her manic rage, she did

---

[34]    The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).  *See supra* note 32.
[35]    The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).  *See supra* note 32.
[36]    The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).  *See supra* note 32.
[37]    The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).  *See supra* note 32.

not recall what court orders existed at what times. *See* PSAMF ¶ 3; DRPSAMF ¶ 3.[38]

In February, 2006, Ms. Handler drove her "former son," D.H., to Russell Handler's mother's house in New York. PSAMF ¶ 8; DRPSAMF ¶ 8. She intended to put D.H. in a good school in New York. PSAMF ¶ 8; DRPSAMF ¶ 8. At that time, Mr. Handler was staying at his mother's house in New York. PSAMF ¶ 9; DRPSAMF ¶ 9.

Around January or February 2006, Russell Handler was living with his mother in King's Point, New York. PSAMF ¶ 20; DRPSAMF ¶ 20. He had no knowledge that Ms. Handler was coming to New York when she appeared at his mother's house around February or March 2006. PSAMF ¶ 21; DRPSAMF ¶ 21. Mr. Handler believed that the protection order only prevented him from having contact with Ms. Handler within the state of Maine. PSAMF ¶ 22; DRPSAMF ¶ 22.[39]

---

[38] The Handlers' paragraph 3 reads: "Eleanor Handler was in a manic rage and that she did not remember the orders that existed at what point in time." PSAMF ¶ 3.

[39] The Handlers claim that "Russell Handler understood that the protection order only prevented him from having contact with Eleanor Handler within the State of Maine." PSAMF ¶ 22 (citing *Pl.'s Opp'n* Attach. 7 *Dep. of Russell Handler*, at 65 (ECF No. 160) (Jan. 22, 2013) (*Pl.'s R. Handler Dep. Tr.*) and *Russell Handler Aff.* at ¶ 2). The Defendants interpose a qualified response, disclaiming any knowledge of what Mr. Handler subjectively believed. DRPSAMF ¶ 22. They also point out that Mr. Handler admitted to receiving an Amended Order for Protection from Abuse that prohibited him from having any contact with Ms. Handler with certain enumerated exceptions, none of which involved the territory of the state of Maine. *Id.* (citing *2006 PFA* and *Stipulated Facts* ¶¶ 7-8). The Court adjusted paragraph 22 to reflect that it represents Mr. Handler's subjective belief. The Court deems the Defendants' qualified response to the modified assertion admitted under Local Rule 56(f), (g).

The Handlers' statement of additional material fact does not include a paragraph 23. The Court does not credit the Handlers' paragraph 24.[40]

### d. Mistreatment of Mr. Handler At the Waldo County Jail

The Court does not credit the Handlers' paragraph 33.[41]

Russell Handler needed to be fed with a feeding tube while at the Waldo County Jail. PSASMF ¶ 34; DRPSAMF ¶ 34. Between July 14, 2006 and August 28, 2006, he "did not get fed most times" and was not given consistent access to his syringes and tubes. PSAMF ¶ 34; DRPSAMF ¶ 34.[42] Donald Leach, an expert witness for the Defendants, documented in his deposition certain dates on which jail records indicate that Mr. Handler was given food, Gatorade, water, and ice: 7/28, 8/1, 8/2, 8/10, 8/11, 8/14, 8/16, 8/17, 8/19, 8/20, 8/23, 8/24, 8/25, 8/26, 8/27, 8/28. PSAMF ¶ 35; DRPSAMF ¶ 35.[43] On the dates on which the Jail records show Mr.

[40]    In paragraph 24, the Handlers claim that "Bryant White arrested Russell Handler as a result of Eleanor Handler's delusions or hallucinations." This is a conclusory statement, and for that reason the Court need not credit it. *Wynne*, 976 F.2d at 796. It is also, as the Defendants point out, unsupported by the record. DRPSAMF ¶ 24. Deputy Reed arrested Mr. Handler on August 14, 2005, *Stip.* ¶ 5, and the King's Point, New York Police Department arrested Mr. Handler on March 4, 2006. *Id.* ¶ 10. Detective White did not at any time arrest Mr. Handler. Once a party agrees to a stipulated fact, he may not contradict that fact in his own statement of facts.

[41]    In paragraph 33, the Handlers claim that "Russell Handler did not receive proper food and nutrition at the Waldo County Jail between July 14, 2006 and August 28, 2006. PSAMF ¶ 33 (citing *Pl.'s R. Handler Dep. Tr.* at 116:14-21). The assertion that Mr. Handler's food and nutrition were not "proper" is conclusory, and the Court does not credit it. *Wynne*, 976 F.2d at 796.

[42]    The Defendants interpose a qualified response, claiming that "Handler took some food through the feeding tube, but he also ate soft foods through his mouth while incarcerated at the jail." DRPSAMF ¶ 34 (citing *Fox Aff.* at ¶ 3). The Court must resolve all factual disputes in favor of the non-movant, and the Handlers' version is supported by record evidence. *Pl.'s R. Handler Dep. Tr.* at 116:14-21. Because the Defendants have not shown record evidence that requires alteration of the assertion of paragraph 34, the Court deems their qualified response admitted under Local Rule 56(f), (g).

[43]    The Handlers' version of paragraph 35 states: "Defendant's expert, Mr. Leach, documented in his deposition the dates the Jail records indicate that Russell Handler was given food/ Gatorade/ water/ice . . . ." PSAMF ¶ 35 (citing PSAMF Attach. 4 *Dep. of Donald L. Leach*, at 109:9-112:11 (ECF

Handler receiving food, water, and ice, those records sometimes only show this happening once or twice a day.  PSAMF ¶ 36; DRPSAMF ¶ 36.[44]

Mr. Handler requires 2,500 calories per day; each can of food he takes contains about 375 calories.  PSAMF ¶ 37; DRPSAMF ¶ 37.  Mr. Handler tries to feed himself around every two hours during the day.  PSAMF ¶ 38; DRPSAMF ¶ 38.[45]

From July 14 to July 19, 2006, Mr. Handler was placed in a cell above a boiler room, which was hot.  PSAMF ¶ 39-40; DRPSAMF ¶ 39-40.[46]  The temperature outside on July 14 was 91 degrees; on July 15, 85 degrees; on July 17, 87 degrees; on July 18, 93 degrees; and on July 19, 81 degrees.  PSAMF ¶ 41; DRPSAMF ¶ 41.

---

No. 160) (Apr. 18, 2013) (*Pl.'s Leach Dep. Tr.*)).  The Defendants interpose a qualified response, claiming that this list is not exhaustive of the dates on which Mr. Handler was given food and water. It is not clear from Mr. Leach's deposition testimony whether the list is exhaustive, and the Court adjusted the assertion to account for this ambiguity.  The Court deems the Defendants' qualified response to the modified assertion admitted under Local Rule 56(f), (g).

[44]    The Handlers' version of paragraph 36 states: "On the dates there are records of Handler receiving some food/ water/ice, sometimes this occurred only once or twice a day."  PSAMF ¶ 36.  The Defendants interpose a qualified response, similar to their qualification for paragraph 35.  The Court adjusted the wording of the assertion for the same reasons detailed above.  *See supra* note 43.

[45]    The Handlers' version of paragraph 38 simply states that "Mr. Handler tries to feed himself around every two hours."  PSAMF ¶ 38.  The Defendants interpose a qualified response, pointing out that Mr. Handler testified that he does not follow this routine at night.  DRPSAMF ¶ 38 (citing *Pl.'s R. Handler Dep. Tr.* at 38).  The Court adjusted the assertion to reflect this qualification, and deems the Defendants' qualified response to the modified assertion admitted under Local Rule 56(f), (g).

[46]    The Handlers' version of paragraph 39 states that the cell was "extremely hot and unbearable."  PSAMF ¶ 39 (citing *Def.'s Reply* Attach. 5 *Dep. of Russell Handler*, at 91:1-25 (ECF No. 169).  The Defendants interpose a qualified response, submitting that Mr. Handler's deposition testimony only establishes that the cell was above a boiler, and that it was hot.  DRPSAMF ¶ 39. The Court adjusted the assertion of paragraph 39 to reflect this, and deems the Defendants' qualified response to the modified assertion admitted under Local Rule 56(f), (g).

Detective White was present in the room on at least one occasion when Mr. Handler was being sodomized. PSAMF ¶ 30; DRPSAMF ¶ 30.[47] While being sodomized, Mr. Handler was told to "plead, sign a piece of paper, and we'll get you right out of here." PSAMF ¶ 31; DRPSAMF ¶ 31.[48]

### e.    Mr. Handler's 2006 Nolo Contendere Plea

On August 28, 2006, in the midst of a change of plea hearing before a state court, Mr. Handler tried to fire his attorney; however, the presiding state judge told him that he could not fire his attorney, and that he had to change his plea. PSAMF ¶ 25; DRPSAMF ¶ 25.[49]    Mr. Handler told the judge in open court that he was

---

[47]    The Defendants deny paragraph 30. DRPSAMF ¶ 30 (citing *Def.'s White Dep. Tr.* at 88:1-25). However, Mr. Handler's deposition testimony supports the assertion, *Pl.'s R. Handler Dep. Tr.* at 106:19-25, and the Court must resolve all factual disputes in favor of the non-movant. The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).

[48]    The Defendants deny paragraph 31. DRPSAMF ¶ 31 (citing *Def.'s White Dep. Tr.* at 39:1-25). However, Mr. Handler's deposition testimony supports the assertion, *Pl.'s R. Handler Dep. Tr.* at 100:4-7, and the Court must resolve all factual disputes in favor of the non-movant. The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).

[49]    The Handlers claim that "[o]n August 28, 2006, Russell Handler remember was [sic] coerced into signing the documents to plea nolo contendre [sic] to violation of the protection order and violation of conditions of release, among other crimes." PSAMF ¶ 25. As written, this statement is conclusory, and not creditable as a fact. *Wynne*, 976 F.2d at 796. The Court adjusted it to represent the historical facts to which Mr. Handler actually testified in his deposition. *Pl.'s Opp'n* Attach. 7 *Dep. of Russell Handler*, at 84:17-21 (ECF No. 160) (Jan. 22, 2013) (*Pl.'s R. Handler Dep. Tr.*).

The Defendants deny the original assertion, citing to a transcript designated "Exhibit L" and to the deposition of Bryant White. DRPSAMF ¶ 25. The Court is unable to locate an Exhibit L, nor any exhibit matching the description "Transcript of Change of Plea and Sentencing." *Id.* The Defendants also direct the Court to page 39 of Bryant White's deposition transcript, but that page does not contain any testimony that addresses the assertion of paragraph 25. *See Def.'s Reply* Attach. 3 *Dep. of Bryant White*, at 39 (ECF No. 169) (Feb. 5, 2013) (*Def.'s White Dep. Tr.*). At most, Detective White denies that he told Mr. Handler that he could get out of jail if he pleaded guilty. Page 39 does not disclose a date or the charge to which Detective White denies he told Mr. Handler to plead guilty. *See id.* Other, adjacent pages from the deposition transcript are not in the summary judgment record.

Record evidence supports the Court's non-conclusory wording of paragraph 25, *Pl.'s R. Handler Dep. Tr.* at 84:17-21. Because the Defendants have not properly controverted the assertion of paragraph 25, the Court deems their denied response admitted under Local Rule 56(f), (g).

being coerced by his attorney to enter a plea. PSAMF ¶ 29; DRPSAMF ¶ 29.[50] Mr. Handler pleaded nolo contendere under protest because he was told by Detective White and the Assistant District Attorney that if he did not plead to the charges that he would be held in jail for another year. PSAMF ¶¶ 28, 32; DRPSAMF ¶¶ 28, 32.[51]

The Court does not credit the Handlers' paragraph 26.[52]

## III. DISCUSSION

### A. Position of the Parties

#### 1. The Waldo County Defendants

The Waldo County Defendants argue that Detective White is entitled to summary judgment on Count XIII whether Count XIII is construed to address the 2005 arrest or the 2006 arrest. *Defs.' Mot.* at 7. As to the 2005 arrest, the Defendants point out that the summary judgment record contains no assertion that

---

[50] The Defendants deny paragraph 29, again citing to "Exhibit L." Because this exhibit is not before the Court, the denial fails. The assertion of paragraph 29 is supported by record evidence, *Pl.'s R. Handler Dep. Tr.* at 89:11-15. The Court deems the Defendants' denied response admitted under Local Rule 56(f), (g).

[51] The Defendants deny paragraph 28. DRPSAMF ¶ 28 (citing "Exhibit L" and *Def.'s White Dep. Tr.* at 39). However, as noted above, Exhibit L is not in the summary judgment record. *Supra* note 49. Although Detective White's deposition testimony could be read to contradict the portion of paragraph 28 that relates to him—assuming it refers to the same plea—the Court must resolve all factual disputes in favor of the non-movant. A fact-finder viewing the evidence in a light most favorable to the Handlers could credit Mr. Handler's testimony and discount Detective White's testimony, concluding that Detective White did tell Mr. Handler that if he did not plea he would spend another year in jail. As for the "woman by the name of Zianna or Zienna" to whom Mr. Handler refers as participating in the conversation with Detective White, *Pl.'s R. Handler Dep. Tr.* at 87:24-25, the fact-finder could reasonably conclude that this was Assistant District Attorney Leane Zainea. *Def.'s White Dep. Tr.* at 26:7-17. Because the Defendants have not controverted the Handlers' paragraph 28, the Court deems their denied response admitted under Local Rule 56(f), (g).

[52] In paragraph 26, the Handlers claim that "Bryant White continuously ignored Russell Handler's statements regarding Eleanor Handler's mental illness." *Id.* at ¶ 26 (citing *Russell Handler Aff.* at ¶ 5). This statement is conclusory and not based on Mr. Handler's personal knowledge. The Court does not credit it. FED. R. CIV. P. 56(c)(4); *Wynne*, 976 F.2d at 796.

Detective White was involved. *Id.* at 7-8. As to the 2006 arrest, they contend that Detective White is entitled to qualified immunity. *Id.* at 8-9.

In support of their qualified immunity defense, the Waldo County Defendants first argue that Mr. Handler's 2006 arrest in New York did not violate any of his constitutional rights. *Id.* at 9-11. This is so, they claim, because there was sufficient probable cause to arrest Mr. Handler for having contact with Ms. Handler. *Id.* at 10-11. Furthermore, they argue, Detective White did not make any false statements in his affidavit in support of the arrest warrant, nor did he intentionally or recklessly omit any exculpatory information. *Id.* at 11-12. The Defendants also argue that even if the information sworn to by Detective White was false, he did not violate any clearly established constitutional right because he reasonably relied on information and documents he received from others in his affidavit. *Id.* at 12. In a footnote, they suggest that Mr. Handler's New York arrest was valid, in part, because of 18 U.S.C. § 2265, "which gives full faith and credit to protection orders issued by another state." *Id.* at 11 n.6.

The Defendants next argue that Sheriff Story and Waldo County are also entitled to summary judgment. First, they contend that neither Sheriff Story nor Waldo County committed any constitutional violation with respect to Mr. Handler's 2005 and 2006 arrests. *Id.* at 12-13. Second, they argue that there is no record evidence of a widespread and pervasive custom or practice within Waldo County, *Third Am. Compl.* ¶¶ 319-20, that would give rise to municipal liability. *Defs.' Mot.* at 13. Third, in response to the Handlers' accusation that the County failed to

adequately train its employees, *Third Am. Compl.* ¶¶ 321-22, the Defendants argue that "[t]here is no evidence of any prior claims of false arrest or malicious prosecution by Waldo County officers, let alone evidence of a need for more or different training." *Defs.' Mot.* at 14-15. Finally, the Defendants oppose the Handlers' claim for supervisory liability in Sheriff Story, *Third Am. Compl.* ¶¶ 323-24, arguing that the record evidence supports none of the elements required for a claim of "deliberate indifference." *Defs.' Mot* at 15. Specifically, they assert that there is no evidence that a grave risk of harm actually existed; no evidence that Sheriff Story was or should have been aware of such a risk; and no evidence that any easily available measures were available to address a risk of which Sheriff Story should have known. *Id.*

In the alternative, the Waldo County Defendants argue that the Handlers should be barred from seeking damages for Mr. Handler's incarceration. *Id.* at 15-16. They first point out that Mr. Handler's nolo contendere plea amounts to "'a statement of unwillingness to contest the government's charges and an acceptance of the punishment that would be meted out to a guilty person.'" *Id.* at 16 (quoting *Olsen v. Correiro*, 189 F.3d 52, 59 (1st Cir. 1999)). They go on to argue that *Olsen* bars Mr. Handler from seeking damages for his incarceration because it would "'undermine the finality of plea bargains,'" "'jeopardize society's interest in a system of compromise resolution of criminal cases,'" and "'lead to inconsistency and an undermining of the criminal process.'" *Id.* (quoting *Olsen*, 189 F.3d at 69).

### 2.    The Handlers

The Handlers first claim that Detective White's affidavit in support of the 2006 arrest warrant was constitutionally deficient because he represented to the judge that Mr. Handler's contact with Ms. Handler in New York violated the Maine protection from abuse order. *See Pl.'s Opp'n* at 3. They argue that Maine's statute governing the territorial applicability of its criminal law, 17-A M.R.S. § 7(1)(A) (1983), does not provide for criminal liability when a person who subject to a protection from abuse order has contact with a forbidden person outside the borders of the state. *Id.* at 6. Because it is undisputed that Detective White knew that Mr. Handler's contact with Ms. Handler occurred in the state of New York, they conclude that his sworn affidavit amounts to a constitutional violation. *See id.*

The Handlers also oppose Detective White's qualified immunity defense. They renew their contention that Detective White's affidavit in support of the arrest warrant was a violation of Mr. Handler's constitutional rights. *Id.* at 8. They next argue that "the territorial applicability statute in Title 17-A Section 7 was clearly established in 2006." *Id.* at 8. Finally, they argue that a reasonable police officer would have been aware that conduct in New York could not violate Mr. Handler's Maine protection from abuse order. *See id.* They argue that Detective White had the burden to establish, in his affidavit in support of the search warrant, that the conduct was within the territorial reach of Maine's criminal law. *See id.*

The Handlers then return to the subject of Detective White's allegedly unconstitutional conduct, arguing that the conduct amounts to malicious prosecution, which "may be actionable" under 42 U.S.C. § 1983. *Id.* at 9 (citing

*Albright v. Oliver*, 510 U.S. 266 (1994); *Malley v. Briggs*, 475 U.S. 335 (1986); and *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 8 (1995)). They view *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980) as establishing the elements of a "cause of action for malicious prosecution," *Pl.'s Opp'n* at 9, and they argue that *Britton v. Maloney*, 196 F.3d 24, 28-29 (1st Cir. 1999), established that "a plaintiff seeking to bring a malicious prosecution claim under Section 1983 must do more than simply satisfy the elements of the common law tort of malicious prosecution." *Id.* In their view, the plaintiff must "'show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.'" *Id.* (quoting *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010)).

The Handlers maintain that there was no probable cause for the 2006 arrest because the allegedly wrongful conduct occurred in New York, not Maine. *Id.* at 9-10. They also contend that Detective White acted with "actual malice." *Id.* at 9-11 (citing facts relating to Mr. Handler's alleged mistreatment at the Waldo County Jail and the alleged coercion of his 2006 guilty plea). Finally, they urge that Detective White made intentionally or recklessly false statements in his affidavit in support of the warrant because "Detective White omitted the fact that all of the alleged criminal conduct . . . did not even occur in the State of Maine." *Id.* at 11.

Turning to Sheriff Story, the Handlers argue that he exhibited "deliberate indifference" to Mr. Handler's constitutional rights. *Id.* at 12. They contend that there is a reasonable inference, based on Sheriff Story's decision-making authority, that Detective White "would need Story's permission /authority to get the warrant

26

for arrest." *Id.* at 13. They also argue that there is a "grave risk of harm" by not "following Maine law on territorial applicability of alleged criminal conduct" and "not following the policies and procedures for securing proper arrest warrants." *Id.* In their view, Sheriff Story could easily have reviewed the warrant application—of which they infer he was aware based on his position as Sheriff—and rejected it based on the alleged territorial infirmity. *Id.* They conclude that this establishes supervisor liability in Sheriff Story. *Id.*

Finally, the Handlers argue that *Olsen* should not bar damages for "wrongful incarceration." *Id.* at 13-14. This is so, they maintain, because a nolo contendere plea is different than a guilty plea; it is not, in their view, "an express admission of guilt by the pleader." *Id.* at 14.

The Handlers do not address the Defendants' arguments regarding the lack of any widespread or pervasive custom or practice, or failure to train. *See id.* at 1-14.

### 3. The Waldo County Defendants' Reply

The Waldo County Defendants rebut the Handlers' argument that a Maine protection from abuse order could not legally give rise to Maine criminal liability for conduct committed in New York. *Def.'s Reply* at 3-8. They quote the text of the statute itself:

> "[A] person may be convicted under the laws of this State for any crime committed by the person's own conduct or by the conduct of another for which the person is legally accountable only if . . . A. Either the conduct that is an element of the crime or the result that is such an element occurs within this State or has a territorial relationship to this State . . . ."

*Id.* at 3-4 (quoting 17-A M.R.S. § 7(1)). They argue that the New York conduct has a "territorial relationship" to the state of Maine because it amounts to a violation of a Maine court order. *Id.* at 4 (citing *State v. Stewart*, 706 A.2d 171, 172 (N.H. 1998); *Pennington v. State*, 521 A.2d 1216 (Md. 1987); and *Farmers' State Bank v. State*, 13 Okla Crim. 283, 284-85 (Okla. Crim. App. 1917)). They further contend that "the law does not allow [Mr. Handler] to circumvent jurisdiction in Maine by committing these acts [violating Maine court orders] in another state." *Id.* at 5.

The Defendants also dispute that Detective White "'acted in reckless disregard, with a high degree of awareness of the probable falsity of the statements made in support of the arrest warrant,'" or committed "'the intentional or reckless omission of material exculpatory facts from the information presented to the magistrate.'" *Id.* at 6 (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 81 (1st Cir. 2005)). They point out that, contrary to the Handlers' claims, Detective White made it clear in the affidavit that all of the allegedly wrongful actions took place in New York. *Id.* (citing DSMF Attach. 15 *Aff. in Support of Arrest Warrant* (ECF No. 152) (March 3, 2006)).

As a fallback, the Defendants argue that, even if the affidavit represented an unconstitutional misrepresentation to the magistrate, Detective White is entitled to qualified immunity because there was no case law that would have alerted him to the fact that he was violating Mr. Handler's constitutional rights. *Id.* at 8.

The Defendants argue that the Handlers waive any claim to municipal liability because they declined to address the Defendants' arguments on this point

in their opposition to the Motion. *Id.* at 8-9 (citing *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) and *Dykstra v. First Student, Inc.*, 324 F. Supp. 2d 54, 68-69 (D. Me. 2004)).

As to Sheriff Story, the Defendants limit their reply to disputing that Sheriff Story's decision-making authority generates a reasonable inference that he was aware of Detective White's warrant application before it was submitted. *Id.* at 9.

Finally, the Defendants claim that the Handlers have waived any argument that Mr. Handler should be able to recover damages for harm from his incarceration. *Id.* at 10 (citing *Pl.'s Opp'n* at 2 and *Schneider v. Local 103 I.B.E.W. Health Plan*, 442 F.3d 1, 3 (1st Cir. 2006)).

### B. Analysis

Count XIII recites both "unlawful arrest" and "malicious prosecution" as grounds for the action under 42 U.S.C. § 1983. *Third Am. Compl.* at 54. However, in opposing this Motion for Summary Judgment, the Handlers only argued that Mr. Handler was the subject of malicious prosecution, not of a false or unlawful arrest. *See Pl.'s Opp'n.*[53] The Defendants agree that malicious prosecution is the proper theory, *Defs.' Mot.* at 9, so the Court deems any argument as to false arrest waived.

---

[53] The Handlers devote considerable briefing in Section I of their Opposition to reciting facts from the record, concluding that "Russell Handler's constitutional rights were violated." *Pl.'s Opp'n* at 2-6. The Handlers do not supply any argument or case law in Section I identifying a theory of constitutional liability. Section II, applying a qualified immunity analysis, states that "Section I of this argument detailed how Detective White violated Russell Handler's constitutional right," but is similarly oblique as to the nature of that right. *Id.* at 8. Section III identifies malicious prosecution as a theory of liability, so the Court assumes from the context that Section I and Section II claim a constitutional right grounded in malicious prosecution.

The First Circuit has, for three decades, pointedly refused to hold that malicious prosecution gives rise to a cause of action under 42 U.S.C. § 1983. *Harrington*, 610 F.3d at 30; *Britton*, 196 F.3d at 28; *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996); *Landrigan*, 628 F.2d at 745-46.[54]  In *Britton*, the First Circuit observed that "[e]very circuit to have considered the question since *Albright* [*v. Oliver*, 510 U.S. 266 (1994)] has expressed general agreement with the view that state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983." *Britton*, 196 F.3d at 28.  Thus, in *Britton* and other cases, the First Circuit has "assume[d], without deciding, 'that malicious prosecution can embody a Fourth Amendment violation and, thus, ground a cause of action under § 1983.'" *Moreno-Medina v. Toledo*, 458 Fed. App'x 4, 7 (1st Cir. 2012) (unreported) (*quoting Harrington*, 610 F.3d at 30)).  Nevertheless, when confronted with the question, the First Circuit has consistently disposed of cases by concluding that plaintiffs failed to meet the requirements of common law malicious prosecution as it might become actionable under § 1983.  *E.g.*, *Moreno-Medina*, 458 Fed. App'x at 7-8.

Following that guidance, this Court assumes, without deciding, that the particular brand of malicious prosecution enunciated in *Britton*, 196 F.3d at 28-30, creates a viable constitutional claim under 42 U.S.C. § 1983.  The Court further assumes that *Calero-Colon* supplies the elements of malicious prosecution, with the

---

[54]     The First Circuit decided *Landrigan v. City of Warwick* on August 27, 1980.     *Landrigan*, 628 F.2d at 736.

additional "deprivation of liberty" requirement of *Britton*. *Id.* at 29 ("[T]he constitutional violation lies in the 'deprivation of liberty accompanying the prosecution' rather than in the prosecution itself"). In sum, to succeed on their § 1983 claim under a malicious prosecution theory, the Handlers would have to prove "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; . . . (4) actual malice," *Calero-Colon*, 68 F.3d at 3 n.5, and (5) that the wrongful proceedings amounted to a "seizure" within the meaning of the Fourth Amendment, *Britton*, 196 F.3d at 28-30.

The parties both argue that the viability of Mr. Handler's malicious prosecution claim turns on the propriety of Detective White's sworn statement that Mr. Handler's New York conduct violated the Maine protection from abuse order. *Defs.' Mot.* at 9-12; *Pl.'s Opp'n* at 8-12; *Def.'s Reply* at 3-8. The Handlers are of the opinion that it was constitutionally infirm for Detective White to assert to the judge that Mr. Handler's conduct outside the state of Maine could violate the Maine court order; the Defendants view this as perfectly proper. This disagreement, in turn, narrows to the parties' differing interpretations of 17-A M.R.S. § 7(1)(A), which requires that the "conduct that is an element of the crime or the result that is such an element occurs within this State or has a territorial relationship to this State." In the Handlers' view, a Maine protection from abuse order could never give rise to criminal liability for contact occurring outside of Maine's borders. *Pl.'s Opp'n* at 6, 11-12. In the Defendants' view, the New York conduct had a "territorial

relationship" to the state of Maine within the meaning of section 7(1)(A).  *Def.'s Reply* at 3-8.  However, neither side cites a Maine decision in support of its position; the Handlers cite no case law at all, while the Defendants offer only analogous cases from New Hampshire, Maryland, and Oklahoma.  The Court is likewise unable to locate a decision of any Maine court applying section 7(1)(A) to out-of-state conduct allegedly violating a Maine court order.[55]

Fortunately, a determination about the geographic reach of the statute is unnecessary.  The Handlers' malicious prosecution claim fails for the entirely independent reason that Mr. Handler's undisputed nolo contendere plea, DSMF ¶¶ 25-26, demonstrates that the allegedly wrongful proceeding was not "terminat[ed] . . . in favor of the accused" as required by *Calero-Colon*.  68 F.3d at 3 n.5.

The alleged malfeasance surrounding Mr. Handler's nolo contendere plea— deliberate starvation, torture by forcible sodomy, and judicial railroading at the change of plea hearing—would of course be deeply troubling, if true.  However, the legal question is not whether the conviction was procedurally or substantively correct, but whether the proceedings were terminated in Mr. Handler's favor.  This civil action for damages is not an appropriate vehicle for challenging the validity of a state criminal conviction.  *Heck v. Humphrey,* 512 U.S. 477, 484-87 (1994).  The

---

[55]  In *State v. Branch-Wear*, 1997 ME 110, ¶ 14 n.4, 695 A.2d 1169, the Maine Supreme Judicial Court suggested that the act of removing a witness from Maine to another state and taking "affirmative steps to prevent her from testifying" at another trial bore sufficient territorial nexus to the state to support jurisdiction under section 7(1)(A).  Interfering with a witness is partially analogous to violating a court order in that it directly interferes with the proper operation of justice in the courts.  However, *Branch-Wear* has an obvious factual difference from this case: in *Branch-Wear*, at least some of the wrongful conduct occurred in Maine.  Thus, while *Branch-Wear* is suggestive, it is not close enough to these facts to provide definitive guidance.

Court may not disturb the result in the state court unless Mr. Handler proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. The Handlers have not shown that any of these conditions exist with respect to his nolo contendere plea, and the Court concludes that any possible action under § 1983, grounded in malicious prosecution, must fail.

This conclusion disposes of the other Defendants as well. Without an underlying constitutional violation, Sheriff Story, Waldo County, and the Waldo County Sheriff's Department cannot be vicariously liable. The undisputed facts in the summary judgment record demonstrate that all Defendants are entitled to judgment as a matter of law on Count XIII.

## IV. CONCLUSION

The Court GRANTS the Defendants' Motion for Partial Summary Judgment (ECF No. 153) as to Count XIII.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 30th day of December, 2013